The next case is Guardian Angels Medical Service v. United States. Mr. Davidson? Yes, Your Honor. And you reserve three minutes of rebuttal time. Is that correct? That's correct, Your Honor. Good morning, Your Honors. May it please the Court. We're here for really one very simple reason, and that's the case has been dismissed on a motion to dismiss for failure to timely file with the Court of Claims. What I want to do, Your Honors, is just kind of take a four-point roadmap here. And that being the first thing is to lay down some background with some dates which I think are going to be important and relevant to this analysis. The second is really a plain reading of the law as it applies to the contract and to any contractor that's in a similar situation. The third part is really the application of Malone educators and the progeny of those cases as they would apply to the way the judge ruled in the Court of Claims. And then the last would be the fourth point is this tolling analysis under Orono, which is basically a bizarre derogation of this Malone analysis. Here's a couple of issues that I'm interested in. You received a letter of default termination on August 2012. Then four months later, Guardian Angels sends a letter to the VA citing defamation and breach of contract. Then on February 2013, this is about five or six months later, you send a letter to the contracting officer. None of those letters offered or provided the... And then there's a subsequent letter, but none of those letters provided the information that would substantiate your claim. Ed, so part of the issue, if you run through, Your Honor, and that's correct. I don't disagree with Your Honor. I find that real relevant that you're challenging a default termination, which is, you know... And you're saying that this should have been a termination by convenience, but yet you never supply the information that you rest your letters on. Well, and so there was a window of opportunity in which we were, when I say we, the contractors waiting for a response either from the VA or from the contracting officer. And so what's relevant here is the setting up of that background, Your Honor, and that is that you receive this first default termination on August 31, 2012. What's important in that default termination, and again, we should look at as a court, is the language. And it says in that default that the contractor has the right to appeal under the disputes clause. Nothing more, no timelines, nothing else. That's all it says. When you go back and you look at the law that applies under the FAR for a default termination, wouldn't that have alerted you to have preserved your appeal somehow, either by filing for an appeal or by presenting information adequate to support a claim for reconsideration or something of that nature? Well, and that was in the works, and that was the issue. But you never did do that. Well, there was no opportunity until the... You had six, seven months. Your Honor, I don't disagree with Your Honor that it would have been more prudent to have all of that presented immediately. It may have made all the difference in the world. I mean, you're asking us to call the statute, but yet nothing really substantively happened after you received the default termination letter, the initial one. And again, Your Honor, I think part of this is... I don't disagree with Your Honor that that's the facts, and that's what it is, that the information was being gathered, and I'll tell Your Honor that just proffering, which is irrelevant at this point. But the contractor was gathering information to present and then received the final letter, which the contractor is saying is the final letter in May 5, 2013. And in that letter, again, the language being important, the letter specifically says there that under the disputes clause that you have the right to appeal 7104, subsection B, which would then be the 12-month period to bring you to the court of claims to file the complaint. And that was the May letter, not the August 31st letter. And so with the issue I think that I try to present under that backdrop is that you have a contractor who receives a letter that says default termination. The contractor, simple contractor, raises service animals, not sophisticated construction contractor or anything else for that matter. They figure out, well, wait a second, what happened and why did this happen and why is this contract being canceled? When they finally have an opportunity to put that together, they say, wait a second, okay, we understand we went through several iterations of this contract. This contract can be terminated, but not for cause, for convenience. Now, that issue isn't raised until the contracting officer actually receives something back from the contractor. So there's no objection to saying, okay, we're going to terminate the contract. Both sides could be in agreement there. But until a claim is actually made to say, we're okay with you terminating, but it's going to have to be one of convenience and not of cause. And then we have that discussion. And so in essence, where I think moving to really now the second point, because I know your honors are well versed with 41 U.S.C. 71, which is applicable pursuant to the FAR 52-233-1 is for us in this contract, is that we now move to Malone and Malone's project. And this whole concept, and I don't think Malone got it wrong. The truth is, I think Malone got it right. And what Malone was saying was something very simple, is that this contractor didn't file a claim before, and this is an important distinction, going to the board, not the court of claims. So this contractor didn't make a claim before going to the board of appeals. And so what had happened then under that circumstance in Malone, Malone said that Congress passed a law expanding the jurisdiction, that claims would not have to be made prior to becoming here. Malone never stood for the premise that we're going to retract or make smaller the right of the litigant to go through the other portions of the law. And really pursuant to that, if you go to, and I think it's even more important, Malone itself, quoting from page 1444, court says, because the claims court has held that it does not have jurisdiction over the validity of a default termination, absent a claim for money by either a contractor or the government, the government contends that the board does not have jurisdiction over the case. And this is the critical point in Malone, and it should have never been expanded in the way it was through the rest of the cases. And now we're headed down this juggernaut path in which the courts have realized that there's an error or a problem here, and we've created this tolling period, which is again another bizarre iteration coming down this kind of poisonous progeny. And that is, this is what Malone said, the court has not yet considered, nor does it now consider, the validity of the court of claims precedence just noted. The Malone court never touched anything that had to do with the court of claims. And all they said was something very simple, that the board, the contractor does not have to be bounced around to the contracting officer and then back to go to the board under a default. Doesn't Malone say that when the contracting officer issues a written decision terminating a contract for default, that is a government claim, and now that triggers 7103 and 7104? And so the logic is that now that you, the contractor, has that final written decision from the contracting officer, you have 90 days to go to an agency board, or you have 12 months to go to the court of federal claims after receiving that written decision from the contracting officer. The issue with that is just that Malone does not say that. Malone says that they can. Well, that's what follows after you've concluded that a termination for default serves as a contracting officer's final written decision on a government claim. I understand, and I guess what I'm trying to bring up is that this case is not one that's been, let's call it unique, before this court, nor has it been unique before the federal court of claims. And this type of case will keep coming up again and again until the law is plain and clear. And that is that either the law directly states, in writing, passed by Congress, somewhere in a statute with bicameralism and presentment, that a contract terminated for default must, shall be filed immediately with the court of claims. That's not what it says when you go to 7103 or 7104. And so what we have under those is that you have to make the claim to the contracting officer. And so my point is, exactly as Malone said, look, we're not going to make you go back to the contracting officer. We understand you got a claim, you made the claim here, that's sufficient. We're not making smaller jurisdiction, we're expanding jurisdiction. Let me ask you a question. On your February 28th letter that went to the VA, it says, close to the end, I guess it would be, you say that you're referencing some costs. And you say the costs are tax security and market Exhibit D. What was in Exhibit D? And is that part of the record before us? I believe it should be. And if it was, it was a... Because later on the contracting officer is saying he never did submit any information. And that's abundantly, I mean, that's not true, but that's part of the issue we face now. Where is Exhibit D? Where is Exhibit D? If it's not a part of the record, Exhibit D, I believe, would have been a list of segregated costs. It wouldn't have been the receipts and the totals. So the only thing we have on the record is a letter from the VA saying you haven't submitted any information to date whatsoever. They use the word whatsoever. Well, it's not the VA technically, Your Honor. It would have been the contracting officer. And so, again, the reason why that's important is if we're going to move to not just the discussion that we had with Malone and its progeny, but to Orono's case and this derogation of, again, what I'm saying to Your Honor really should be rectified by correcting the progeny of Malone. But if we even go down this path of Orono's, that's just it. We've presented it, and if you look at the communications back... But we don't know that you presented it. You can't even cite it. I mean, you don't even know if it's in the record or not. I believe it is in the record, Your Honor, the patched Exhibit D. Sure, we're in the record. It would have been patched as Exhibit D if it wasn't. I apologize to the court, but that's where I believe it was, and we went... Okay. Government and I went through it. So I guess what I'm kind of getting to in that Orono's case and why that's important is just that if you take Orono's, Your Honor, and you look at really the communications that had happened back and forth, there were several communications between the contractor and the government and the contracting officer. Okay, you're into your rebuttal time, so let's stop here. Thank you, Your Honor. Mr. Bigler, you may proceed. May it please the court. The trial court correctly dismissed Guardian Angels' complaint for lack of jurisdiction because Guardian Angels failed to file that complaint within 12 months of receiving the termination for default decision from the contracting officer. In fact, we are here today because Guardian Angels refuses to acknowledge that a termination for default is a government claim, that it's final and appealable to the Court of Federal Claims, and if the contractor chooses to appeal it to the Court of Federal Claims, it must do so within 12 months. Do you think the 12-month time limit in the statute is jurisdictional? Yes. Or is it just the claim processing rule? No, Your Honor, it's jurisdictional. Well, how do we know that? The Supreme Court is on the march. Every term, it seems to find a new case, a new statutory time limit, where it finds that these time limits are just claim processing rules. They're not jurisdictional. Well, in the Court of Federal Claims, though, it's different because in the Court of Federal Claims, can only hear claims where Congress has waived sovereign immunity, and the law 41 U.S.C. 7104 specifically states that you can bring your case within 12 months of the contracting officer's final decision, and so, obviously, Congress has waived sovereign immunity during that 12-month period, but after that, it has not, so it's jurisdictional. Why isn't the platter of May 3rd the final decision? It's not a final decision. The only way it could possibly be a final decision would be if the contracting officer had reconsidered her earlier termination for default, but there's no evidence that that occurred here. Plaintiff has the burden of showing evidence. There's evidence to that effect. She said that she wanted more information, and then somewhere down the road, or she didn't get it, or she wasn't happy with it, and then she issued this letter and says, you know, I've decided that I'm not going to reconsider it, but she was. She had that period of time when it was under advisement. Well, what she said in the letter was, I've received your claim, and I'm unable to evaluate it without this supporting documentation. Once you provide that information, I will look at it, and I'll respond in accordance with the Federal Acquisition Regulations. The Federal Acquisition Regulations don't say anything about reconsideration. That's an idea that comes from the claims court decisions. So, reading her letter, it appears she thought that they had submitted a claim, and as a contracting officer, she was going to respond to it once she received the supporting documentation, but because she never received it, she never evaluated it, and she never did anything, and then she explicitly states, I have not reconsidered my termination for default decision, and I will not do so. Well, it doesn't matter what she said. It's what she did, no matter how she characterized it, and it seems to me that if she asked, if she invited information to fill in the blanks on his reconsideration request, and then for reasons unknown, maybe she just didn't want to wait any longer, she said, okay, I'm terminating it. I'm confirming my original decision. But she didn't do anything. I think what she said was, I will evaluate it when I get that information, and because she never received it, she never did that. I think for her to reconsider her decision, she would have to go back through the reasons that she made the termination for default decision in the first place, which would mean she'd likely have to go to the contract file, look through the things that she looked at in coming to the termination for default decision. There's no evidence she did that. The only evidence is... She does say in her letter, she says, at this time the VA is unable to reasonably evaluate or respond to your claim due to a lack of supporting documentation. Then it goes on and requests that they supply support. Well, when she says the VA is unable to reasonably evaluate or respond to your claim, doesn't that mean that they went back to the file and to see what's there, and they say, well, there's not enough here for us to reasonably evaluate your claim. Give us more information. Doesn't that reopen the inquiry? I think she's looking at their claim that they submitted, and she's saying, I can't evaluate this without the supporting documentation. There's no evidence she went back and looked at the file. What she would have done had they provided the information is purely speculation, and that's not enough to... When she looks at the letter that was sent, and based on that letter, she cannot reasonably make a decision one way or the other. She's asking for additional information. Doesn't that roll back the default termination timing? No, because what she says is, I can't make an evaluation, and once I receive this information, I will evaluate it. Would this be different had they supplied some information, like a week after this letter? It might have, but, again, that would be speculation, and that's not enough for plaintiff to meet their burden to show that there's jurisdiction. In fact, two months later, the contracting officer sent a second letter, after not hearing anything from the appellant, and stated, I have not and shall not reconsider that decision. So, wasn't the appellant on notice that whatever letter that had been filed back in February had never actually been evaluated, and now it's not going to be evaluated? Exactly. They were on notice, and she again mentioned the time period. She again mentioned 41 U.S.C. 7104 and the appeal period in that letter. I thought that was curious or interesting that she uses that language, I have not and shall not. It seems to me that saying that, had you supplied some information before I wrote this letter, then this could have been a reconsideration. You could interpret it that way, but still, that's not enough to help the guardian angels here. She didn't reconsider it. She might have, had they provided the information, but she didn't, and we don't know what she would have done had they provided it. I'm slightly concerned. I mean, if you had responded to Judge Reina's question with, anytime someone perfects a reconsideration request with not only an argument of the claim, but also all kinds of supporting documentation, then the contracting officer will, in fact, reconsider her initial decision to terminate, and then that would toll the clock. But in this particular instance, that didn't happen. There was no meaningful attempt to perfect the initially defective request for reconsideration. I'm just trying to understand the process here. Sure. When somebody supplies and files a perfected request for reconsideration from an adverse contracting officer's decision to terminate, are you saying it's purely wholly optional and discretionary on whether the contracting officer can or will entertain that request for reconsideration? That's exactly right. That's what the, it's reconsideration if the contracting officer receives all the requests, and at that point, maybe they have two choices. They could just send a quick letter back saying, I got your request for reconsideration, and I'm not going to consider it. I'm not going to reconsider my decision. Or they could say, oh, I got your request, and I'm going to reconsider it, and I'll get back to you later. And the cases specifically talk about, did the contracting officer spend some time reviewing their request and reevaluating the earlier decision? But here, not only did she not do that, she explicitly said she didn't do that. She didn't even have the information because they never provided it to do that. Is this really a question about jurisdiction, or is it one about agency filing deadline? And ask that in view of where Sikorsky's case. It's not an agency filing deadline. It's a deadline once you receive a final decision to go to the Court of Federal Claims or to the board, which they could have done in the 90-day period. But if they don't go to the board or go to the Court of Federal Claims, then it's jurisdictional with respect to the Court of Federal Claims. It would depend on what the contracting officer did with the information, whether she reconsidered her termination for default, or whether she thought, oh, this is a separate claim. They have some separate claims for some separate damages that they want. I think it's hard to answer that question. But in this specific case... I think you've answered it. It does tall in certain circumstances. We have to decide whether this is one of them. Correct. And the Court of Federal Claims did that based on the evidence that she had before her. She came to the factual conclusion that the contracting officer reviewed the letter, couldn't evaluate it, asked for more information, and stated, once I receive that information, I will evaluate it in accordance with the Federal Acquisition Regulations. So at that point, don't we have an open, pending reconsideration? Well, it's hard to say what Guardian Angels was asking for. It appears to me... Well, no, no. The contracting officer has requested additional information. At that point in time, don't we have an open, pending reconsideration? That would be one way to look at it. But it's even debatable whether this was even a request for reconsideration because Guardian Angels never used that term, and what they referred to it as a claim, and the contracting officer referred to it as, I received your claim, but I'm unable to evaluate it. I guess there's no regulation or anything like that when it comes to reconsideration requests of a contracting officer's decision to terminate, right? That's right. It's not in the Federal Acquisition Regulations. It's just sort of, I don't know what to call it, unregulated practice. Well, it comes from these claims court decisions, Your Honor. Okay. And then what is the genesis for the apparent rule or practice of tolling? I'm not sure. Where does that come from? How does the tolling work? I mean, why is there tolling? Where does the rule of tolling come from? Can you toll something that's jurisdictional? I don't know the answer to that, but I can tell you how it's worked in the reconsideration under these decisions, is that if the contracting officer does reconsider that decision, and if the court finds that the contracting officer reconsidered that decision... No, I understand the practice of how it works. I'm trying to figure out what's the source for the law that you can even toll. Well, it comes from these claims court decisions that the agency can change its mind or change its decision within a reasonable time. And then if it reevaluates the information and comes to a new decision, regardless of whether it's the same decision or a different decision, that new decision starts the 12-month period. So in this situation, had there been, let's say, some submission of information, and let's say it's totally immaterial, irrelevant, the contracting officer looks at that and says, my decision here is that the default termination still applies. Wouldn't that be a new decision that's final and not toll the statute or the deadline? Sorry, your Honor. Under the facts, I would agree that that sounds like a new decision. Okay, so the facts that I laid out was information that's totally irrelevant and immaterial. What about no information at all? And aren't we left with the same situation of weighing the sufficiency? I mean, maybe if it's totally irrelevant, there's a little bit of weight. If there's no information, there's no weight. But still, the contracting officer makes a decision as to reconsideration. Wouldn't that be a final decision at that point? What I think was important in your hypothetical was that they received the information and the contracting officer evaluated it and made a decision. And that didn't occur here. So there was no reconsideration. The letter the contracting officer says, basically she says, send me some more information. I've evaluated this and there's not enough for me to make a final determination. She doesn't say that, but that's what her first letter essentially says. Then the second letter she says, I've looked at this and you haven't sent me any information whatsoever. So I'm not going to make a reconsideration. I haven't and will not make a reconsideration. Isn't that a final? No, your Honor. I don't think she said that she looked at this. She basically said, I sent you a letter earlier and I asked for this information and I never received it. And then she goes on to say, I haven't reconsidered my decision and I'm not going to reconsider it. Okay. Any other questions? No. Thank you, Your Honor. Thank you. Just a brief tie-up point, Your Honors. And I think that what Your Honors had presented, it appears as though some things have kind of resonated. And what I'm trying to express to the bench and to this Court is just that there is a body of law that exists uncodified in any way, shape, or form. And there's no way that really a novice contractor comes in and says, okay, here's a tolling period or here's what this letter is. She wasn't totally novice. She had your assistance through part of this. I mean, back in December, your counsel, your lawyer, you could have said, I have an appealable situation here. I better do something to preserve my appeal. And Your Honor is correct. It never happened. And I guess what I'm expressing to Your Honor is that directly within the statutes, the FAR provisions, and everything else, without going back into the Aronos case and doing a complete case law search, there's nothing that comes in and directly says to that contracting officer or able-bodied counsel who's there to assist them that you only have 12 months, even when the contracting officer says, I'm waiting for a response. After May 3rd, why did your client wait eight months before filing a complaint with the Court of Federal Claims? After getting that letter, making it crystal clear that the contracting officer hasn't considered whatever dispute letter you filed and is not going to consider any subsequent information you submit, why did it take eight months to file a complaint in the Court of Federal Claims? In reality, Your Honor, the cost of a lawsuit is significant. And for a not-for-profit organization that raises service animals, it took quite some time to be able to come up with the money to fund a litigation against the federal government. And so, in essence, at the end of the day, Your Honors, I believe what we see here is really the major travesty is it's not even heard. There's no testimony taken. The day in court has been removed. And that is the issue that I would suggest that Your Honors go back and look at Malone instead of just moving under this Aronos progeny. To be clear, are you asking us to overrule Malone? No. Okay. Not Malone. I believe that the progeny of Malone needs to be looked at with closer lenses because we're now engaged in this process that is uncodified in which we're saying, well, is it a tolling period or isn't it a tolling period? Do we have reconsideration? Do we not have reconsideration? And there's nothing that's really pointing us to that. Okay. Thank you very much.